NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| RALPH BAKER, | : | |
| --- | --- | --- |
| Plaintiff, | : | Civ. No. 14-7583 (PGS-TJB) |
| v. | : | |
| PAUL FISHMAN, et al., | : | MEMORANDUM |
| Defendants. | : | |

## PETER G. SHERIDAN, U.S.D.J.

This matter comes before the Court on defendant St. Francis Medical Center's ("St. Francis") motion to dismiss the complaint, (ECF No. 77), Plaintiff's motion for injunctive relief, (ECF No. 91), and defendant Dr. Vladislav Bargman's motion for dismissal with prejudice (ECF No. 98). For the following reasons, St. Francis' and Dr. Bargman's motions are granted, and Plaintiff's motion is denied. The complaint is dismissed with prejudice as to all parties.

## I.

Plaintiff is currently incarcerated in New Jersey State Prison ("NJSP"), Trenton, New Jersey. He filed a complaint claiming his constitutional rights were violated by Defendants (1) Steven Johnson, Administrator of the New Jersey State Prison ("NJSP"); (2) Doctor Ihumma Naachuku, M.D., head of the Medical Clinic at NJSP; (3) Doctor Russell Freid, M.D., a physician at the St. Francis Medical Center; (4) Michael Piecuch and (5) Dr. Bargman (improperly pled as Barman Vladislav), medical residents at the University Hospital in Newark, New Jersey; (6) Marci L. Marsker, Clinician Administrator at the University of Medicine and

Dentistry of New Jersey ("UMDNJ"); (7) Kathy Trillo, employee of UMDNJ; (8) Doctor Abu Ahsan, M.D., employee of UMDNJ; (9) UMDNJ; (10) Rutgers University; (11) New Jersey Department of Corrections ("NJDOC"); (12) Gary Lanigan, former Commissioner of NJDOC; (13) Jeremy Burg, a nurse employed by Rutgers; (14) Lace Carter, a nurse employed by Rutgers; (15) Correctional Medical Services ("CMS"), a provider of inmate healthcare for the NJSP; (16) Alejandrina Sumicad, employee of UMDNJ; (17) Susan Spangler, employee of UMDNJ; and (18) St. Francis. (ECF No. 1). The Court had rejected two previous pleadings by Plaintiff for failure to state a claim and improper joinder but afforded him opportunities to amend. Presently before the Court is Plaintiff's Third Amended Complaint ("TAC"). (ECF No. 44).[1]

According to the TAC, Plaintiff has been in and out of the New Jersey prison system since at least 1990, his latest stint in NJSP beginning in 2009. TAC at 3. Plaintiff has been diagnosed with prostate cancer, Hepatitis C, and kidney damage. *Id.* The TAC alleges that Plaintiff received inadequate medical care during his current period of incarceration for a variety of ailments including his cancer and that he received inadequate medical care during his previous incarcerations because his cancer should have been detected earlier. Plaintiff also alleged that he was seeking medical clemency from former New Jersey Governor Christie, but defendants were impeding his efforts by refusing to provide medical reports and letters.

The Court dismissed without prejudice Plaintiff's claims based on failure to detect his cancer earlier because "[t]here [was] no allegation that any defendant deliberately ignored clear warning signs of cancer before 2009, or that they had actual knowledge of the cancer and simply hid that fact from Plaintiff." June 30, 2017 Opinion ¶ 4 (ECF No. 49). It also dismissed Plaintiff's allegations that defendants were interfering with his efforts to obtain clemency from

---

[1] A Fourth Amended Complaint was filed on May 5, 2017 but was stricken by order of the Court on May 26, 2017. (ECF No. 46).

2

the governor. *Id.* ¶ 5. It further dismissed any claims regarding incidents of inadequate medical care that accrued before December 5, 2012; state-law tort claims against all defendants except CMS, St. Francis, and Dr. Freid; and all § 1983 claims against NJDOC, UMDNJ, Rutgers, CMS, St. Francis, Lanigan, and Johnson. *Id.* ¶¶ 6-9. It permitted denial of medical services claims against the individual medical defendants with regard to Plaintiff's current incarceration and state law tort claims against non-public defendants that accrued within the two years prior to the filing of the original Complaint to proceed. *Id.* ¶ 10.

Dr. Bargman was dismissed from the case without prejudice on May 21, 2018. (ECF No. 80). The Court granted Plaintiff leave to file a Fifth Amended Complaint within 30 days of that Order, but to date Plaintiff has not done so. St. Francis now moves to dismiss the TAC. Plaintiff opposes the motion. (ECF No. 88). Plaintiff also filed a motion for a preliminary injunction asserting St. Francis administered Lupron to him without consulting him. (ECF No. 91). The Court conducted oral argument on October 15, 2018, at which time Plaintiff appeared telephonically. Counsel for Dr. Bargman also appeared and argued the complaint should be dismissed with prejudice as to Dr. Bargman as Plaintiff had failed to comply with the Court's instructions to file a Fifth Amended Complaint. (*See also* ECF No. 83). A written motion on behalf of Dr. Bargman followed on October 23, 2018. (ECF No. 98). Plaintiff has filed no written opposition to Dr. Bargman's motion within the timeframe permitted. The Court considers Dr. Bargman's motion on the papers. Fed. R. Civ. P. 78(b).

## II.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) which is filed prior to answering the complaint is considered a "facial challenge" to the court's subject matter jurisdiction. *Cardio–Med. Assocs. v. Crozer–Chester Med. Ctr.*, 721 F.2d

3

68, 75 (3d Cir. 1983). This is distinct from a factual attack on the court's subject matter jurisdiction which can only occur after the answer has been served. *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In deciding a Rule 12(b)(1) motion to dismiss which is filed prior to an answer, the court must "review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. *Gould Elec., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks

omitted). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

## III.

### A. St. Francis' Motion to Dismiss

As this Court as previously noted, the claims in Plaintiff's TAC are disjointed and unclear. (*See* May 15, 2018 Opinion, ECF No. 79 at 5). He repeats paragraphs and at times makes very little sense:

> Plaintiff Baker believes and therefore avers that St. Francis Medical Center Defendants, through their action and omission of their officers, agents and active Board members of the board of [Directors], servants, employees as more fully set forth in the proceeding paragraphs of this Complaint. Continue to do so by negligently inflict [sic] serious damage by such [illegible due to page being cut off] treatment causing emotion trauma, as a result of the breadown [sic] and physical failure of his organs especially his kidneys, and liver function. Including but not limited to blood in his stool, which bespeaks of potential colon and prostat [sic] cancer.
>
> As a result thereof and the failure to conduct an catherization upon the plaintiff, to prevent blockages of arties [sic], to his heart, without interruption.
>
> As a direct result of these actions of St. Francis St. Francis Defendants have caused a series of strokes to occur, and no catscan was conduct for two month from Oct. 2012, thru Oct. 24, 26, 28 2012, or Nov. 1-4, 2012, not until Dec. 18, 2012 was Catscan conducted. That continued efforts were brought against Plaintiff, to avoid the exposure of these neglectful actions by Defendants.
>
> The seizure of Nitrostate by Dept. of Correctional Personnel, then being [intravenously] given 6 liters of Nitrostat by Brewin James, per day, and other medication, thereafter being diagnosed by Abu Ashan as having nerve damages, after having the strokes, and recohnization [sic] reconition [sic] for the strokes themselves, resulting the catscan some two month later indicates delay in treatment, and failure to realize the serious medical need, by two separate medical agencies. While St. Francis was notified officially on Jun 2 20, 2013, by Plaintiff himself, while on byopsie [sic] surgery for Liver cancer and Hepatitis C.

5

TAC at 28-29. He also appears to allege that St. Francis is also known as Sister of Philadelphia, Sister of St. Francis. *Id.* at 29. He alleges St. Francis shares a "common bar code, for identifying patients who are incarcerated at New Jersey nineteen prison [sic] . . . ." *Id.*

> The shared information on treatment of Hepatitis C, reaching from stage 1 of .40 into stage two stage 2, reaching over .80 reflecting the need for immediate treatment, as reflected by the infectious disease special in 2008, and again some five years later in 2013, the failure to treat the disease, when an existing cure, was developed, and those institutions listed in this complaint recognize the need for treatment, and exactly what that treatment would be. Was consequently determined to be denied. The existing kidney damage noted in the medical files as renal inefficiency (chronic) and the fluid in the left lung was all well noted for a period of eight (8) years. The only consult on lung cancer was to suggest the patient stop smoking, no other lung cancer treatment. While both infectious disease specialist mentions [dialysis] as the standard form of treatment for the known blood borne antigens;

*Id.* He makes the same allegations that St. Francis shares a "common bar code" with Rutgers. *Id.* at 30.

The Court dismisses the remaining claims against St. Francis for failure to state a claim. The Court dismissed the federal claims against St. Francis in its June 30, 2017 order for failure to state a claim, (ECF No. 49 ¶ 9), and the complaint is too rambling and incoherent to plausibly infer a state tort claim against the hospital even under the most lenient of pleading standards. Inferring a cause of action based on the negligent hiring of Dr. Freid, *see* TAC at 34, 36, nothing in Plaintiff's wordy complaint indicates St. Francis had reason to know of any of its employee's alleged unfitness or incompetence.[2]

---

[2] "The tort of negligent hiring or failure to fire addresses a different wrong from that sought to be redressed by the *respondeat superior* doctrine. . . . [T]he tort of negligent hiring addresses the risk created by exposing members of the public to a potentially dangerous individual, while the doctrine of *respondeat superior* is based on the theory that the employee is the agent or is acting for the employer." *Di Cosala v. Kay*, 450 A.2d 508, 515 (N.J. 1982). "The cause of action has two elements: (1) that the employer knew or had reason to know of the 'particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons,' and (2) that through the employer's negligence, the employee's 'incompetence, unfitness, or dangerous characteristics proximately

The Court dismisses the claims against St. Francis with prejudice. Plaintiff has filed three unintelligible complaints and has been provided numerous opportunities to amend and submit a coherent complaint. He was unable to explain at oral argument why he was able to send numerous other filings to the Court but not his Fifth Amended Complaint.[3] The Court finds that further opportunity to amend would be inequitable and futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). *See also Alston v. Parker*, 363 F.3d 229, 234 n.7 (3d Cir. 2004) ("[D]ismissals with prejudice may be appropriate where a party refuses to file an amended complaint or if the repleading does not remedy the Rule 8 violation.").

## B. Dr. Bargman's Motion to Dismiss

Dr. Bargman moves to dismiss the claims against him with prejudice as Plaintiff has failed to comply with the Court's May 15, 2018 order by filing a Fifth Amended Complaint. (ECF No. 98). As Plaintiff has not filed a Fifth Amended Complaint and has not provided good cause for failing to comply with the order, the motion is granted. The claims against Dr. Bargman are dismissed with prejudice. Fed. R. Civ. P. 12(b)(6). *See also Alston*, 363 F.3d at 234 n.7.

## C. Plaintiff's Motion for a Preliminary Injunction

In support of his motion for injunctive relief, Plaintiff contends St. Francis administered Lupron to him without consulting him, permanently rendering him sterile. (ECF No. 94 at 1-2). He also contends St. Francis delayed medical treatment for his three ailments for two years, (*Id.*

---

caused the injury'" *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 636 (D.N.J. 2014) (quoting *Di Cosala*, 450 A.2d at 516) "To be foreseeable, the injury must be within a general 'zone of risk' created by the employee's conduct." *Id.* (quoting *Di Cosala*, 450 A.2d at 517).

[3] The Court notes that Plaintiff alleges he provided his Fifth Amended Complaint to the NJSP law library for e-filing on June 18, 2018. (ECF No. 86). The Court never received that alleged filing, but it did receive seven (7) other filings from Plaintiff subsequent to the dismissal of the claims against Dr. Bargman. (ECF Nos. 88, 90, 91, 92, 93, 94, 96).

at 8), and states he "has yet to receive radiation for [p]rostate [c]ancer, and other noted deadly disease," (*Id.* at 10). Additionally, he states the medical director of St. Francis seized his pain medications and has denied him access to "Cyberknife" treatment. (*Id.*) Finally, he suggests he should be appointed pro bono counsel. In opposition, St. Francis contends "a motion for 'preliminary injunction' . . . is wholly misplaced to the extent the relief sought is to prevent the dismissal of St. Francis based on the pending motion." (ECF No. 95 at 2). St. Francis also contends "it is not a state actor and case law pertaining to federal claims and/or Section 1983 claims are wholly irrelevant." (*Id.* at 3).

"A preliminary injunction 'is an extraordinary remedy . . . which should be granted only in limited circumstances.'" *Holland v. Rosen*, 277 F. Supp. 3d 707, 724 (D.N.J. 2017) (quoting *Am. Tel. & Tel Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). "The purpose of an injunction is to prevent future violations . . . ." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also Disabled in Action Penn. V. S.E. Penn. Transp. Auth.*, 539 F.3d 199, 215 (3d Cir. 2008). In order to obtain preliminary injunctive relief, the moving party must demonstrate: (1) a reasonable probability of success on the merits; (2) irreparable injury if the requested relief is not granted; (3) the granting of preliminary injunction will not result in greater harm to nonmoving party; and (4) the public interest weighs in favor of granting the injunction. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). The Third Circuit recently clarified the standard for preliminary injunction, "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* at 179. If the moving party satisfies the first two factors, "a

court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

As the Court is dismissing the complaint with prejudice for failure to state a claim, Plaintiff has not shown a likelihood of success on the merits.[4] In addition, Plaintiff's motion is unaccompanied by a verified complaint or any affidavit to support the claims in his brief. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) (recognizing that a "verified complaint or supporting affidavits may afford the basis for a preliminary injunction" and that "a court should not grant [injunctive] relief unless the moving party makes a . . . showing sufficient to demonstrate that he will probably succeed on the merits"). Finally, at oral argument, Plaintiff indicated he was seeking an order allowing him additional access to the law library. The Court does not see that Plaintiff gave notice to the prison that he is seeking this relief, and therefore shall deny this request.

### IV.

For the reasons stated above, St. Francis' and Dr. Bargman's motions to dismiss are granted. Plaintiff's motion for a preliminary injunction is denied. An appropriate order follows.

DATED: Dec 15, 2018

PETER G. SHERIDAN
United States District Judge

---

[4] The state courts are the proper forums for a new claim of medical malpractice based on a lack of informed consent.